**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TOMMY BAKER, et al., CASE NO.: 1:12-cv-112

Plaintiffs, Judge Michael R. Barrett

v.

UNION TOWNSHIP, OHIO, et al.,

Defendants.

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Tommy Baker's Motion for New Trial. (Doc. 144). Defendants' Union Township, Ohio, Union Township Board of Trustees and Michael Ventre have filed a response in opposition (Doc. 148), and Plaintiff Tommy Baker has filed a reply (Doc. 152).

## I. BACKGROUND

Plaintiff brought claims against Officer Ventre for violation of his Fourth Amendment right to be free from excessive force under 42 U.S.C. § 1983, state law assault, and state law battery. Plaintiff also brought a claim against Union Township for municipal liability for the actions of Officer Ventre under 42 U.S.C. § 1983. The case proceeded to trial on May 11, 2015. (Doc. 111).

During the Jury Charge Conference, Plaintiff's counsel raised the issue of contributory negligence in the context of Defendants' proposed instruction on mitigation of damages. (Doc. 121-1, PageId 3417; Doc. 136, PageId 3881). Plaintiff requested that the following sentence be added to the end of the mitigation of damages instruction: "Any negligence allegedly attributable to the Plaintiff is not a matter for your consideration." (Doc. 121-1, PageId 3417).

The Court clarified that the failure to mitigate did not relate to, for example, whether it was Plaintiff's fault that he was drunk and fell, but rather concerned whether Plaintiff continued to drink after the incident such that he did not heal from his injuries like he should have. (Id.). To that end, the Court revised the instruction to indicate that Defendants were asserting that Plaintiff failed to mitigate his damages *after* the injury or incident such that the argument that Plaintiff contributed to his injury by, for example, being drunk was foreclosed. (Id., PageId 3882). Plaintiff's counsel then inquired as to whether Defendant's counsel would argue that Plaintiff's injuries were his fault because he ran from the police. (Id.). The Court indicated they would not make that argument because the mitigation of damages instruction related to the failure to mitigate damages after the injury or incident. (Id.).

The final instruction given on mitigation of damages was as follows:

> Defendants assert that following the incident, Mr. Baker failed to mitigate his damages. To prevail on this defense, Defendants must show by a preponderance of the evidence Mr. Baker did not make reasonable efforts under the facts and circumstances after the incident to reduce or lessen the harm suffered. If you find that Defendants have proved this defense by the preponderance of the evidence, you should reduce any damage award by the amount that could have been avoided after the incident by the exercise of reasonable efforts to reduce or lessen the harm suffered.

(Doc. 127, PageId 3715).

In the closing statement, Plaintiff's counsel raised the issue of "accountability" by stating:

> [T]his is a case about police use of force and accountability. It's a simple case. It's about what happened during those three seconds inside 1313 Rondo Lane, Tommy Baker's home, on February 14, 2011.
>
> . . .
>
> This case is equally about making the police officer and Union Township accountable for what happened that night.

(Doc. 146, PageId 4323).

In the closing statement of Defendants' counsel, he perpetuated the accountability theme by stating:

> The first thing I'd like to talk about is accountability. Now, it's plaintiff's position that Union Township and Mike should be accountable. But he is taking no accountability, no accountability for any of his actions in this case. He was drunk, he ran away from the police, he knew he was being chased, he never stopped, he never surrendered, and yet this is all Mike Ventre's fault. That just isn't the way the law works.

(Doc. 138, PageId 3917).

In a sidebar conference following the closing statement of Defendants' counsel, Plaintiff's counsel again requested the contributory negligence instruction based upon the above-quoted statement by Defendants' counsel. (Id., PageId 3948). The Court declined to give the instruction, explaining that counsel could craft the rebuttal argument to address the issue. (Id., PageId 3948-50). Plaintiff's counsel indicated that without the charge she would not address the issue. (Id., PageId 3950). The same request was reiterated by Plaintiff's counsel after the conclusion of closing arguments at which time the Court again declined to give the instruction, explaining that the argument was not clearly one of contributory negligence. (Id., PageId 3952-54).

On May 20, 2015, the jury returned verdicts in favor of Defendants on all counts. (Doc. 130).[1]

Plaintiff now moves for a new trial on the ground that the Court failed to properly instruct the jury concerning the inapplicability of contributory/comparative negligence to Plaintiff's constitutional excessive force claim under 42 U.S.C. § 1983.

---

[1] The interrogatories reflect that the jury found that a reasonable officer would have believed that Plaintiff was actively resisting arrest as defined in the instructions or fleeing at the time of the tasing once inside the home at 1313 Rondo Lane and that a reasonable officer inside the home at 1313 Rondo Lane would have believed the governmental interest in securing the arrest of Plaintiff outweighed the risk of injury to Plaintiff. (Doc. 130-1, PageId 3768). Upon answering both of those subparts affirmatively, the jury was instructed to enter a verdict in favor of Defendants on all four counts. (Id.).

## II. STANDARD FOR A NEW TRIAL

Under Federal Rule of Civil Procedure 59(a), a court has discretion to grant a new trial on all or some of the issues after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." "Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996). Here, Plaintiff seeks a new trial on the basis that the Court should have instructed the jury that contributory/comparative negligence does not apply to Plaintiff's § 1983 excessive force claim.

## III. ANALYSIS

In some circumstances, the refusal to give a jury instruction may satisfy the third ground for obtaining a new trial. To obtain a new trial due to the refusal to give a jury instruction, the moving party must show (1) the requested jury instruction is legally correct; (2) the requested jury instruction is not otherwise substantially covered by the instructions actually given to the jury; and (3) the absence of the requested jury instruction impairs the moving party's theory of the case. *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997). A new trial based on an omitted jury instruction is not required, however, "unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003); *see also Sukiewicz*, 110 F.3d at 361.

With respect to the first element, the Sixth Circuit has held that comparative negligence "does not apply to damages for federal constitutional rights violations." *McHugh v. Olympia*

*Entm't, Inc.*, 37 F. App'x 730, 736 (6th Cir. 2002). Nor is it a defense to intentional torts. *Hays v. Jefferson County*, 668 F.2d 869, 875 (6th Cir. 1982). While Defendants dispute that the cases cited by Plaintiff for that proposition support the inclusion of the proposed instruction, the proposed instruction itself was a legally correct statement of the law.

With respect to the second element, the Court finds that the requested jury instruction was substantially covered by the final jury instructions. The Court first instructed the jury on the standards applicable to a § 1983 excessive force claim, including the "objectively reasonable" standard. (Doc. 127, PageId 3700-02); *see also Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Miller v. Sanilac County*, 606 F.3d 240, 251 (6th Cir. 2010). Specifically, the Court instructed:

> With respect to the first element [of an excessive force claim under § 1983], a use of force is "excessive" when that use of force was "objectively unreasonable" under the totality of the circumstances. In deciding this issue, you must carefully balance the nature and quality of the intrusion on Mr. Baker's right to be protected from excessive force against the government's right to use some degree of physical coercion or threat of coercion to make an arrest. Not every push or shove, even if it may later seem unnecessary in hindsight, violates the Fourth Amendment. In determining whether there has been a violation of the Fourth Amendment, you are not to consider the extent of the injury Mr. Baker has alleged to have been inflicted but rather whether Officer Ventre subjected Mr. Baker to gratuitous violence. In deciding this issue, you must pay careful attention to all of the relevant facts and circumstances, including the severity of the crime; whether Mr. Baker posed an immediate threat to the safety of Officer Ventre or others; and whether he was actively resisting by engaging in threatening behavior or attempting to evade arrest by flight. Under the law, it is reasonable to tase an individual if a reasonable officer would believe the subject poses an immediate threat to the safety of the officers or others, or the suspect is actively resisting by engaging in threatening behavior or attempting to evade arrest by flight. However, it is unreasonable to tase an individual if a reasonable officer would believe the suspect is no longer fleeing. If the individual is no longer fleeing and poses no immediate threat to the safety of Officer Ventre or others and is not actively resisting arrest, it is likewise unreasonable to tase. In the case of an elevated surface, you must consider the totality of the circumstances including whether the elevated surface would have been apparent to a reasonable officer in order

> to determine if the government interest in perfecting the arrest outweighs the likelihood of injury to the suspect.
>
> You must base your determination on whether the use of force was objectively unreasonable on what a reasonable officer would do under the circumstances and not on Officer Ventre's state of mind. You must decide whether a reasonable officer on the scene would view the force as reasonable, without the benefit of 20/20 hindsight. This inquiry takes into account that police officers are often forced to make split-second judgments in circumstances that are sometimes tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation. If an officer reasonably, even if mistakenly, believes facts to exist that justify the particular force used, the force would not be objectively unreasonable.

(Doc. 127, PageId 3700-02). This standard permits the jury to consider the totality of the circumstances to determine whether a reasonable officer would conclude that Plaintiff was fleeing, threatening, actively resisting arrest, or standing on top of the elevated surface at the time of the tasing inside the home. *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)); *Miller v. Sanilac County*, 606 F.3d 240, 251 (6th Cir. 2010) (citing *Fox v. DeSoto*, 489 F.3d 227, 236-37 (6th Cir. 2007)); *see also Bouggess v. Mattingly*, 426 F. Supp. 2d 601, 607 (W.D. Ky. 2006) (stating that the analysis in a § 1983 excessive force claim "must consider all of the knowledge possessed by [the officer] at the moment he determined to employ . . . force [and] [w]e cannot simply take a snapshot of the moment and consider it in isolation from other information [because] the totality of knowledge possessed by [the officer] as he faced the moment of decision is relevant to the inquiry"). The Court's interrogatories made plain, however, that the ultimate determination related to Officer Ventre's actions inside the home. (*See* Doc. 127-1, PageId 3728).

The Court next instructed the jury on proximate causation. (Doc. 127, PageId 3702). The instructions do not indicate that there could be more than one cause of the harm. (*See id.*).

The Court also specifically addressed the issue of contributory negligence in the context of mitigation of damages where the issue was raised by altering the mitigation of damages

instruction to emphasize that the mitigation had to have occurred *after* the injury or incident. By implication, the damages could not be reduced as a result of Plaintiff's actions taken *before* the injury or incident.

An additional instruction on the inapplicability of contributory negligence to the excessive force claim would not have enhanced the jury's understanding of the law. *See Eaton Aero., L.L.C. v. SL Montevideo Tech., Inc.*, 129 F. App'x 146, 152 (6th Cir. 2005) (finding no plain error in the omission of proposed jury instructions, and stating that the court had found no law "suggesting that otherwise correct jury instructions are made incorrect because they do not include those matters the jury is not permitted to consider"). Indeed, none of the cases cited by Plaintiff demonstrate that the jury should have received an instruction on the applicability of contributory negligence. In several of the cases cited by Plaintiff, a jury instruction on contributory negligence was never given to the jury. *Hays v. Jefferson County*, 668 F.2d 869, 875 (6th Cir. 1982), *cert. denied*, 459 U.S. 833 (1982) (finding no error in the trial court's refusal to give a contributory negligence instruction in relation to a claim against supervisory officers and municipalities under 42 U.S.C. § 1983 because contributory negligence is not a defense to an intentional tort case and the plaintiff's negligence in no way related to the allegations against the defendants); *Blair v. Harris*, 993 F. Supp. 2d 721, 727 (E.D. Mich. 2014) (the issue of comparative negligence arose in the context of a damages hearing—not a jury trial—and the trial court rejected the defendant's argument that it should take into consideration the plaintiff's potential criminal conduct in awarding damages because comparative negligence standards had no application to awarding damages in a § 1983 case); *Quezada v. County of Bernalillo*, 944 F.2d 710, 721 (10th Cir. 1991) (where defendants argued that the trial court—following a trial without a jury—failed to apply comparative negligence principles, the circuit court considered

the argument only in relation to the trial court's state law rulings because comparative negligence did not apply to constitutional violations under § 1983). The other cases, unlike this case, involved both a constitutional claim under § 1983 and a state law claim to which comparative negligence was applicable, and the courts recognized the difficulty in instructing jurors appropriately due to the likelihood of jury confusion as to whether comparative negligence would apply to the § 1983 claim. *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 737-38 (6th Cir. 2002) (finding that jury confusion on whether comparative negligence applied to § 1983 claims because the verdict forms did not distinguish between the damages suffered due to the separate federal and state law claims that were subject to different standards justified the trial court's reinstruction of the jury on comparative negligence); *Clappier v. Flynn*, 605 F.2d 519, 530 (10th Cir. 1979) (recognizing difficulty of instructing jury on comparative negligence claim and non-comparative civil rights claim in a manner that avoids confusion). Here, the proposed instruction similarly would have created jury confusion by interposing a new legal concept that does not apply to the § 1983 excessive force claim and that is not otherwise mentioned or defined in the jury instructions.

As for the third element, Plaintiff contends that the above-quoted statement of Defendants' counsel in closing arguments improperly raised the issue of contributory negligence, which substantially impaired her ability to respond without the proposed instruction. The Court disagrees. Even if the statements of Defendants' counsel were imperfectly phrased, they do not plainly convey a strict contributory negligence rule as Plaintiff suggests. Plaintiff's counsel raised the theme of accountability in her closing argument. Defendants' counsel perpetuated that theme with his statement, but did not argue contributory negligence with respect to mitigation of damages or mention words such as "contributory," "comparative," or "apportionment." Taken

in context, the statements appear to refer to Defendants' position that the objectively reasonable standard applies under the circumstances of this case to relieve Officer Ventre of liability. The phrases "he never stopped" and "he never surrendered" used by Defendants' counsel to refer to Plaintiff's actions bolster that understanding because, consistent with the Court's instruction, an excessive force finding could be made if a reasonable officer would have known under the circumstances that Plaintiff had stopped fleeing or stopped resisting arrest. In addition, when viewed together with the arguments that followed, the statements further appear to challenge Plaintiff's credibility as to his recollection of the events that took place that evening.

But regardless of the specific meaning of those statements, Plaintiff's counsel was not impaired in constructing an argument to address the statements made by Defendants' counsel in the absence of the proposed instruction. Plaintiff was able to emphasize the applicable standards for considering whether the force was excessive and was the cause of his injuries. Plaintiff also was able to argue, and did indeed argue, that the jury should consider only what happened inside the home. (*See* Doc. 146, PageId 4323, 4325, 4337-44). The interrogatories provided by the Court offered support that the ultimate determination to be made concerned the actions taken inside the home. (*See* Doc. 127-1, PageId 3728). Plaintiff thus was not impaired in arguing that a reasonable officer would have known that Plaintiff was not fleeing, was not actively resisting arrest, and was not threatening inside the home or that a reasonable officer would have known that Plaintiff was standing on an elevated surface inside the home.

Importantly, the inclusion of the proposed instruction would not have prevented Defendants from referencing or arguing about the actions of Plaintiff outside the home as they did because, as explained above, the objectively reasonable standard permits consideration of the totality of the circumstances.

Accordingly, the Court finds that because the instructions, taken as a whole, are not misleading and did not give the jury an inadequate understanding of the law, a new trial based on an omitted jury instruction is not warranted. Plaintiff's Motion for a New Trial (Doc. 144) is **DENIED**.

**IT IS SO ORDERED.**

s/Michael R. Barrett
JUDGE MICHAEL R. BARRETT
UNITED STATES DISTRICT COURT